```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF INDIANA
                     HAMMOND DIVISION
```

```
TODDCO, INC., an Indiana Corporation  )
and TODD SANDERS, an individual,      )
                                      )
     Plaintiffs,                      )
                                      )
     vs.                              )   NO. 2:04-CV-3
                                      )
NEXTEL WEST CORP. d/b/a NEXTEL        )
COMMUNICATIONS and CINGULAR           )
WIRELESS, LLC,                        )
                                      )
     Defendants.                      )
```

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment, filed by Defendant, Nextel West Corp., d/b/a Nextel Communications ("Nextel"), on December 1, 2004. For the reasons set forth below, the Motion for Summary Judgment is **DENIED**.

BACKGROUND

Plaintiffs are Todd Sanders ("Sanders") in his individual capacity, Todd Sanders in his official capacity as president of Toddco, Inc. ("Toddco"), and Toddco, Inc., an Indiana corporation owned and operated by Todd Sanders. Defendant Nextel is a foreign corporation that provides wireless telecommunications services. Defendant, Cingular Wireless, LLC ("Cingular"), is also a foreign corporation that provides wireless telecommunication services.

Litigation has been stayed as to Cingular pending arbitration, and Cingular is not a party to this motion. This case arises from the delay in porting (or transferring) a wireless number from Cingular to Nextel after Sanders requested that Nextel port the telephone number. Plaintiffs allege the delay resulted in Toddco's loss of business, good will, and ability to compete, and that Sanders suffered a loss of income. Plaintiffs seek compensatory and punitive damages based upon Defendant's alleged failure to provide wireless telephone number portability in accordance with 47 U.S.C. section 251, negligence, and misrepresentations. (Sec. Am. Compl. ¶¶ 38-44.)

The following facts are either undisputed or reflect the evidence in the light most favorable to Plaintiffs, as the party opposing the motion for summary judgment.[1] In their second amended complaint, Plaintiffs allege that some time prior to 2002, Sanders owned a Cingular wireless telephone with a telephone number issued by, and service provided through, Cingular. (Sec. Am. Compl. ¶¶ 11, 13.) When Sanders founded Toddco in 2002, he began using his Cingular phone number to conduct Toddco business. *Id.* ¶ 12. Sanders' Cingular phone number was Toddco's only business number. *Id.* ¶¶ 13, 19.

---

[1] At the time Nextel filed the instant Motion for Summary Judgment, it had not yet filed an answer in this case. Plaintiffs argue that Nextel has therefore admitted all allegations contained in Plaintiffs' second amended complaint. Nextel did file an answer to the second amended complaint on January 12, 2005, one day after Plaintiffs moved for default judgment against Nextel. On March 21, 2005, this Court denied the motion for default judgment against Nextel, finding that the default was largely technical, and not willful. Consequently, this Court has considered Nextel's answer to the second amended complaint in determining the undisputed facts.

Sanders, in his official capacity and acting on behalf of Toddco, decided to change wireless service providers.  *Id.* ¶ 15.  Sanders attempted to have his Cingular phone number "ported," or transferred, to a Nextel wireless phone for the purpose of conducting Toddco's business with the same phone number, but through a service agreement with Nextel, rather than Cingular.  *Id.* ¶¶ 15, 28.

On December 5, 2003, Sanders contacted Nextel to transfer the Cingular wireless telephone number to Nextel.  (Sanders Aff., ¶ 10.)  Sanders advised the Nextel representative that the wireless telephone number was Toddco's only business telephone number, and that Toddco could not be without service for a significant period of time.  (Sanders Aff., ¶¶ 11, 23.)  Sanders was told by Nextel representatives that the process of transferring the wireless number from Cingular to Nextel may take two or four weeks, but that the switch itself, wherein Plaintiffs would be without wireless service, would take only a few hours.  (Sanders Aff., ¶ 12.)  After receiving Nextel's assurance, Sanders instructed Nextel to port the number.  (Sanders Aff., ¶¶ 8-9, 11-13.)

Nextel entered a port request on December 5, 2003, for the Cingular number 219-682-7682.  (Ex. "C" to Nextel's Answers to Pls.' First Set of Interrogs.)  Nextel's port history log, attached to Nextel's answers to interrogatories, sets forth in detail the actions Nextel took to port the number and the difficulties it encountered.  (*See* Nextel's Answer to Pls.' First Set of Interrog. No. 3.) Cingular

disconnected the number on December 19, 2003. *Id.*

Sanders contacted approximately 31 Nextel representatives after the port request. *(*Nextel's Answer to Pls.' Interrog. No. 1.) Many of these representatives advised Sanders that there were difficulties, Nextel was working to correct the problems, and that the port would take only a few more hours to complete, or that service would soon be restored. (Sanders Aff., ¶¶ 16-18.) Plaintiffs were without service to the number in question from December 19, 2003, to January 10, 2004. (Sec. Am. Compl. ¶¶ 23, 31.) When the transfer was finally completed on January 10, 2004, it was 36 days after the initial port request. (Sanders Aff., ¶ 19.)

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts

in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993).

Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.  In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

Plaintiffs Can Bring Claims Under 47 C.F.R. Section 52.31

    Nextel argues that Plaintiffs lack standing to bring this action under 47 C.F.R. section 52.31 because only the Federal Communications Commission ("FCC") can enforce the duty to port wireless numbers. (Def.'s Br. in Supp. of Summ. J., pp. 14-15.)  Plaintiffs disagree, claiming that although the FCC has enforcement powers, citizens are not precluded from bringing individual claims for damages.

    The Telecommunications Act of 1996 (the "Act") imposes numerous duties on local exchange carriers (LECs).  *See* 47 U.S.C. § 153(26) (defining LECs).  The duty at issue here is the obligation "to provide, to the extent technically feasible, number portability in accordance with requirements prescribed by the Commission." 47 U.S.C. § 251(b)(2).  "Number portability" is defined by the Act as "the ability of users of telecommunications services to retain, at the same location, existing telecommunications numbers without impairment of quality, reliability, or convenience when switching from one

telecommunications carrier to another." 47 U.S.C. § 153(30). Congress viewed number portability as a means of encouraging competition because a customer is less likely to switch carriers if he cannot retain his telephone number. *Cellular Telecommunications & Internet Ass'n v. FCC*, 330 F.3d 502, 513 (D.C. Cir. 2003) (hereinafter "*CTIA*").

The *CTIA* court noted the Act did not expressly require wireless carriers to provide number portability because the Commission had not yet determined whether wireless services should be included in the definition of a LEC. *Id.* at 505. However, the FCC has since expanded 47 U.S.C. section 251(b)(2) to include commercial mobile radio service ("CMRS"), or wireless providers. *See* 47 C.F.R. § 52.31; *In re StarNet, Inc.*, 355 F.3d 634, 635-36 (7th Cir. 2004) (citing *CTIA*, 330 F.3d at 509; *In re Telephone Number Portability,* 11 F.C.C.R. 8352 (1996); *In re Telephone Number Portability,* FCC 03-284 (Nov. 10, 2003)). Regulations were promulgated by the FCC requiring wireless carriers to provide number portability (the ability of consumers to keep their phone numbers when they switch wireless carriers). 47 C.F.R. § 52.31. Nextel acknowledges that, as a wireless carrier, it is required to provide number transferability, or portability, under the Act. (Def.'s Br. in Supp. of Summ. J., p. 4 n.4.)

Nextel cites *CTIA* for the proposition that Plaintiffs lack standing to lodge a complaint under 47 C.F.R. section 52.31, highlighting the following quote: "[t]he Commission has not yet

enforced the wireless number portability requirement against petitioners." 330 F.3d at 508-09. Nextel's reliance upon *CTIA* is misplaced. *CTIA* involved wireless carriers challenging the FCC's authority to impose regulations requiring number portability, and wireless carriers seeking review of the FCC's order denying permanent forbearance from the Commission's 1996 rules which require wireless carriers to provide number portability. The Court concluded that the challenge to the FCC's authority to impose number portability was time-barred, and it denied the petition for review with respect to the Commission's forbearance decision, finding permanent forbearance from the number portability rules was not justified. *CTIA*, 330 F.3d at 513.

Indeed, the FCC has power to enforce wireless number portability. *CTIA*, 330 F.3d at 504-05. However, a private party may generally sue another private party under a statute if it creates a private right of action. *Kendall-Jackson Winery, Ltd. v. Branson*, 212 F.3d 995, 998 (7th Cir. 2000). Section 207 states that:

> **[a]ny person** claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or **may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter,** in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207 (emphasis added). As this Court thoroughly set forth

in its June 24, 2004, order denying Nextel's motion to dismiss, there is no doubt the text of section 207 expressly provides a private right of action to Plaintiffs. *See Conboy v. AT&T Corp.*, 241 F.3d 242, 253 (2d Cir. 2001) (holding that 47 U.S.C. sections 206-07 afford a private right of action). Here, Plaintiffs did not file a complaint with the FCC for enforcement, consequently, the FCC need not have acted in order for Plaintiffs to bring this action. Nextel's argument that only the FCC can enforce the portability requirement fails.

Sanders' Claim as President of Toddco

Nextel contends that Sanders has no claim as Toddco's president because "there is no authority for the president of a corporation to maintain a cause of action for losses to that corporation, distinct or separate from the corporation's claim for those losses." (Def.'s Br. in Supp. of Summ. J., p. 8.) Nextel's argument is completely unsupported by case law or legal authority. As pointed out by Plaintiffs, the Court's previous order denying Nextel's motion to dismiss addressed this identical issue. In that order dated June 24, 2004, the Court recognized that naming Sanders in his official capacity as president of Toddco is not any different than naming Toddco itself. *See Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 466 (7th Cir. 2001) (where suit is brought against a school district and various individuals in their official capacity, the naming of the individual defendants adds "nothing to the suit";

-9-

*Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) (naming the mayor as a defendant in his official capacity is equivalent to suing the city).  This Court further reasoned that there is no prohibition on multiple plaintiffs suing a single defendant under the same legal theory.

Nextel has presented no additional argument, law or evidence to support its contention that Sanders' claims must be distinct from Toddco's.  Summary judgment will not be granted against Sanders in his official capacity based on this argument.  This Court once again finds that Sanders has a claim against Defendants in his official capacity.

<u>Toddco and Sanders, in His Official Capacity,
May Bring Suit Under the Act</u>

Nextel argues that Toddco cannot be covered by the Act because it "is neither a customer, nor a consumer." (Def.'s Br. in Supp. of Summ. J., p. 9.)  Nextel again cites *CTIA,* claiming the purpose of the Act is to help protect "consumers" of wireless service or "customers" of wireless service providers.  *CTIA*, 330 F.3d at 509.  Nextel urges that one of these labels, "customer" or "consumer" (and they add "subscriber" as well) must apply to Toddco in order for it to have a proper cause of action.

In response, Plaintiffs urge that the *CTIA* court's use of the words "customer" and "consumer" does not act to limit the scope of portability requirements or liability.  Plaintiffs claim that section 207 does not mention the words "consumer" or "customer" or

-10-

"subscriber," but instead grants the right of action to "any person claiming to be damaged" by a violation of a duty imposed by the Act. 47 U.S.C. § 207.

This Court agrees that a fair reading of *CTIA* shows that the terms "consumer" and "customer" appear to be used for mere semantic and illustrative purposes, and are not the product of statutory interpretation.  It is true that section 207, which creates Plaintiffs' statutory cause of action, makes no mention of the words "consumer" or "customer" or "subscriber."  *See* 47 U.S.C. § 207. Rather, the Act merely affords a cause of action to "any person" damaged by a violation of a duty imposed by the Act.  *Id.*  "Person" is defined under the Act as "an individual, partnership, association, joint-stock company, trust, or corporation."  47 U.S.C. § 153(32). Thus, Toddco fits within the statutory definition of a "person," and it is consistent with congressional intent to allow Toddco and Sanders, in his official capacity, to bring a claim against Nextel for failure to timely port the number.

Sanders Has a Claim as an Individual

Nextel concedes that Sanders, as an individual subscriber to wireless service, is a person covered under section 207.  However, it urges that Sanders cannot demonstrate any separate, non-derivative individual loss of business, money, or goodwill as a result of the delayed transfer.  (Def.'s Br. in Supp. of Summ. J., p. 10.)

-11-

Unsupported by any relevant or persuasive case law, Nextel argues that Sanders' claim is a derivative action which should be governed by Rule 23.1.

These statements by Nextel are slightly misleading. Plaintiffs' second amended complaint alleges damages to both Toddco and to Sanders individually. The Complaint states that Nextel's (and Cingular's) breach caused "the inability of existing Toddco customers to reach Toddco," "the inability of new customers to reach Toddco for service work," a detrimental impact on Plaintiffs' reputation, an impact on "Plaintiffs ability to compete with competitors in the marketplace and has resulted in a loss of employees, sales, and income", and **"loss of income to Sanders."** (Sec. Am. Compl. ¶¶ 32-37 (emphasis added).) Therefore, it is clear that Sanders has a claim for damages outside of the context of a derivative action. No evidence has been put forth by Nextel to show that there was no loss of income to Sanders. In contrast, Plaintiffs claim Sanders was forced to live off of income from his retirement account and was exposed to liability for personal guarantees on various loans that lenders extended to Toddco. (Sanders Aff., ¶¶ 26, 28.) Therefore, there is a question of material fact regarding Sanders' loss of income.

<u>Nextel is not Entitled to Summary Judgment on Plaintiffs'
Claim That Nextel Breached Its Statutory Duty</u>

Nextel argues that "the fault for the delay in porting lay wholly

with Cingular; not Nextel." (Def.'s Br. in Supp. of Summ. J., p. 12.) Thus, Cingular made it not "technically feasible" for Nextel to port the number until January 10, 2004. *See* 47 U.S.C. § 251(b)(2).

Unfortunately, aside from Nextel's conclusory assertion that Cingular is at fault (not Nextel), Nextel's memoranda are devoid of significant analysis. Nextel does not address how Cingular's actions allegedly absolve it of all liability, Nextel fails to significantly analyze whether it owed a duty of care to Plaintiffs, and Nextel does not provide any authority for what constitutes "technically feasible" under the Act, or whether its actions met such a standard. It is not this Court's obligation to do Nextel's research or support bald assertions for it. *United States v. Smith,* 26 F.3d 739, 743 (7th Cir. 1994) (stating courts need not research and construct legal arguments for parties); *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point."); *Gold v. Wolpert,* 876 F.2d 1327, 1333 (7th Cir. 1989) ("We decline to entertain Gold's asserted but unanalyzed and undeveloped claims."); *Hershinow v. Bonamarte*, 735 F.2d 264, 266 (7th Cir. 1984) (refusing to consider an argument that was briefed in a "perfunctory and undeveloped [] manner").

A movant for summary judgment bears the burden of proving both the absence of a genuine issue of material fact *and* entitlement to

judgment as a matter of law. Fed. R. Civ. P. 56(c). Regardless of the existence or absence of a genuine issue of material fact, Nextel has simply made no argument to support its bare assertion that it is not liable. Nextel has an obligation to provide the Court with both the factual and legal basis for its arguments, and to apply the law to the facts. *See Celotex*, 477 U.S. at 323 (holding summary judgment movant must demonstrate that the undisputed facts form a basis to secure judgment as a matter of law). Although Nextel generally points to its answers to Plaintiffs' interrogatories which set forth the chronological sequence of the port history and the steps Nextel took during the porting process, Nextel has failed to connect those facts in the record to any legal basis for its claim that it is entitled to summary judgment. Therefore, summary judgment is not warranted. *Id.* (finding failure of the movant to link facts to elements of the case for which he bears the burden of proof necessitates denial of a motion for summary judgment).

Finally, Plaintiffs argue in their response that Nextel failed to address their non-statutory claims, and that these claims for negligence, breach of contract, estoppel/detrimental reliance, and intentional misrepresentation/breach of duty of good faith/ constructive fraud should survive summary judgment. Indeed, Nextel did not address these alleged claims in Nextel's motion for summary judgment or give any indication that it was moving for summary judgment on these alleged claims. Nextel raises these arguments (plus

-14-

argues Plaintiffs are not entitled to punitive damages) for the first time in Nextel's reply brief, accordingly, the Court will not consider them.  *See Morrison v. Duckworth*, 929 F.2d 1180, 1183 n.3 (7th Cir. 1991).

CONCLUSION

    For the aforementioned reasons, Nextel's Motion for Summary Judgment is **DENIED**.

**DATED:  April 28, 2005**       **S/RUDY LOZANO, Judge**
                                       **United States District Court**