UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| TODDCO, INC., and TODD SANDERS, | ) | |
| in his official capacity as president of | ) | |
| Toddco, Inc. and in his individual capacity, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:04-CV-003-RL |
| | ) | |
| NEXTEL WEST CORP. d/b/a NEXTEL | ) | |
| COMMUNICATIONS and CINGULAR | ) | |
| WIRELESS, LLC, | ) | |
|     Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on (1) Cingular's Motion to Compel Arbitration and to Stay Litigation as to Nextel's Cross-Claim Pursuant to the Federal Arbitration Act [DE 162], filed by Cingular Wireless, LLC ("Cingular") on August 16, 2005, and (2) Nextel's Motion for Leave to File Surreply [DE 170], filed by Nextel West Corp. d/b/a Nextel Communications on September 14, 2005.

**PROCEDURAL BACKGROUND**

On January 7, 2004, Plaintiff Toddco, Inc. filed a Complaint under 47 U.S.C. § 251 and 47 U.S.C. § 407.  On January 9, 2004, Toddco, Inc. filed an Amended Complaint.  On January 29, 2004, Toddco, Inc. filed a Motion for Leave to File a Second Amended Complaint, which the Court granted on February 25, 2004.  The Second Amended Complaint seeks both compensatory and punitive damages from the Defendants based on their alleged failure to properly port (transfer) a wireless telephone number used for Toddco, Inc's heating and air conditioning business.  The

Second Amended Complaint added Plaintiffs Todd Sanders in his official capacity as President of Toddco, Inc. and Todd Sanders, an Individual (all Plaintiffs collectively, "Toddco").

On March 1, 2004, Cingular filed a Motion to Compel Arbitration and to Stay Litigation, seeking to stay Toddco's claims against Cingular, which the Court granted on May 10, 2004.

On December 1, 2004, Nextel filed a Motion for Summary Judgment, which the District Court denied on April 28, 2005.  On January 11, 2005, the Plaintiffs filed a Motion for Default Judgment as to Nextel, which the District Court denied on March 21, 2005.

On May 12, 2005, Nextel filed a Motion for Leave to File Cross-Claim, which the Court denied on May 24, 2005.  A jury trial in this matter was scheduled for June 6, 2005, which was vacated on June 2, 2005.  On June 24, 2005, Nextel filed a Motion for Leave to File Cross-Claim and to Modify or Set Aside the Court's Order of May 10, 2004.  On July 14, 2005, the Court granted the Motion for Leave to File Cross-Claim and denied the Motion to Modify or Set Aside the Court's Order of May 10, 2004.  Nextel filed its Cross-Claim against Cingular on July 15, 2005.  In the Cross-Claim, Nextel seeks indemnification from Cingular for any liability imposed on Nextel for the claims brought by Toddco.

On August 16, 2005, Cingular filed the instant Motion to Compel Arbitration and Stay Litigation.  Nextel filed a Response on September 1, 2005, and Cingular filed a Reply on September 12, 2005.  On September 14, 2005, Nextel filed a Motion for Leave to File Surreply.

**FACTUAL BACKGROUND**

Nextel's Cross-Claim against Cingular seeks indemnification pursuant to a Wireless Local Number Port Agreement ("Port Agreement") between Nextel and Cingular for any liability imposed

on Nextel for damages to Toddco resulting from the porting of Toddco's cellular telephone number from Cingular to Nextel.  The Port Agreement contains an indemnification clause:

> 15.  Indemnification
>
> 15.1 Standard: Each Party shall indemnify and hold harmless the other Party, including its parent, subsidiaries and affiliates, and each of their respective officers, shareholders, directors and employees, from and against any third party claims, losses or liabilities (including, without limitation, reasonable attorney's fees and expenses) ("Third Party Claims"), arising from actions taken by one Party, its employees and agents, in relation to a port request submitted to the other Party, or arising out of or relating to any failure to comply with any obligation in this Agreement, except for any such loss, claim, damage, or liability resulting from the gross negligence or willful misconduct of a Party seeking indemnification pursuant to this section.
>
> 15.2 Notice: A Party seeking to be indemnified hereunder will provide the other Party with prompt, written notice of any Claims covered by this indemnification and will cooperate appropriately with the indemnifying Party in the defense thereof. The indemnifying Party shall not settle or compromise any such Claim or consent to the entry of any judgment without the prior written consent of each indemnified Party, such consent not to be unreasonably withheld or delayed.

Cingular Br., Exh A., Sec. 15, p.13.  The Port Agreement further contains a section on Escalation Procedures and Dispute Resolution:

> 21.     Escalation Procedures
>
> The Parties shall agree to a single point of contact in each company who shall be notified in the event a Party encounters a post-porting issue(s) or a case of suspected breach of this Agreement.  This action should precede actions by a Party under Section 22 Dispute Resolution.  Once a Party institutes Escalation Procedures under this Section, all Parties shall refrain for 3 (three) days from taking any action under Section 22.  The points of contact for each Party are as follows:
>
> For Carrier A:  NEXTEL                    For Carrier B
>
> Attention:  Melissa Flicek                Cingular Wireless
> 10120 West 76th Street                    Port Support Center
> Eden Prairie, MN 55344                    101 Cingular Drive
>                                           Cedartown, GA 30125

22. Dispute Resolution

22.1 General Provisions

22.1.1 Parties Intentions: Without limiting the Parties' right to bring a dispute otherwise within the jurisdiction of a regulatory agency before such agency or unless otherwise required by law, the Parties desire to resolve disputes arising out of this agreement without litigation. Accordingly, in the event of a dispute, claim or controversy arising under this Agreement ("Dispute"), the affected Party shall resolve the Dispute as provided herein.

22.1.2 Interim Relief: After initiation of Escalation Procedures under Section 21, or during dispute resolution under Section 22.1.2 Procedures, or during the initiation of arbitration or pending the outcome of arbitration under Section 22.2 Arbitration, either Party may, without waiving any remedy under this agreement, seek from any court having jurisdiction any interim or provisional relief that is necessary to protect the rights or property of that Party. As an alternative, upon selection of an arbitrator, either party may apply to the arbitrator seeking injunctive relief until the arbitration award is rendered or the controversy is otherwise resolved.

22.1.3 Procedures: At the written request of a Party to invoke the procedures hereunder, each Party shall appoint within 5 (five) days of the request a knowledgeable, responsible representative to meet and negotiate in good faith to resolve a Dispute. Parties may be represented by counsel to assist in and/or conduct such negotiations. The discussions shall be left to the discretion of the representatives. Upon agreement, the representatives may utilize other alternative dispute resolution procedures such as mediation to assist in the negotiations. Discussions and correspondence among the representatives for purposes of these negotiations shall be treated as confidential information developed for purposes of settlement, exempt from discovery and production, which shall not be admissible in the arbitration described below or in any lawsuit without the concurrence of all Parties. Documents identified in or provided with such communications, which are not prepared for purposes of the negotiations, are not so exempted and may, if otherwise admissible, be admitted in evidence in the arbitrability [sic] or lawsuit.

22.1.4 Notice for Arbitration: If the foregoing negotiations do not resolve the Dispute within 60 (sixty) days of the initial written request, either Party may serve upon the other Party by certified mail a written demand that the Dispute be arbitrated, specifying in reasonable detail the nature of the Dispute to be submitted to arbitration in accordance with Section 22.2, below. The demand, effective upon receipt, shall be made within a reasonable time after the Dispute, has arisen. In no event shall the demand for arbitration be made more than one year after the underlying cause of action arises.

22.1.5 Arbitration Commencement and Decision: The arbitration hearing shall commence within 45 (forty-five) days after the demand for arbitration. The

arbitrator shall rule on the dispute by issuing a written opinion with 30 (thirty) days after the close of hearings.

22.2    Arbitration

22.2.1  Agreement to Arbitrate Disputes:  Except as set forth in Section 22.1 above, upon mutual agreement, any Dispute may be resolved exclusively by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator may be entered in any court having jurisdiction thereof.  The Federal Arbitration Act, 9 U.S.C. Secs. 1-15, not state law, shall govern the arbritability [sic] of all Disputes.

22.2.2  Venue of Arbitration:  Any arbitration of a Dispute initiated by Cingular shall be conducted in Georgia and any arbitration of Dispute initiated by Nextel shall be conducted in Washington.

22.2.3 Selection of Arbitrator:  The Parties further agree that they will ask the American Arbitration Association (AAA) case manager located at the appropriate AAA Case Management Center, to provide to each Party to the Dispute a list of 5 (five) proposed arbitrators qualified to decide the controversy and who are experienced in telecommunications law.  Within 7 (seven) days of receipt of this list, each Party to the Dispute will cross off names of proposed arbitrators the Party does not wish to use, leaving at least two candidates on the list, will number the remaining names in the order of preference, and will return the annotated list to the case manager.  The case manager will select an arbitrator from the modified lists of preferences.  The Parties will accept the case manager's selection of the Arbitrator.

22.2.4  Discovery:  Discovery shall not be permitted in such arbitration as allowed by the rules of AAA or such other arbitration agency selected by the Parties pursuant to Section 22.2.1, or as otherwise agreed to by the Parties.

22.2.5  Arbitration Award or Decision:  The Parties agree that the arbitrator shall have no power or authority to make awards or issue orders of any kind except as permitted by this Agreement and substantive law, and in no event shall the arbitrator have the authority to make any award that provides for punitive or exemplary damages.  The arbitrator's decision shall follow the plain meaning of this Agreement and the relevant documents.  The arbitrator's award shall be final and binding and may be enforced in any court of competent jurisdiction.  Each Party shall bear its own costs and attorneys' fees, and shall share equally in the fees and expenses of the arbitrator.

Cingular Br., Ex. A, Secs. 21-22, pp. 15-17.

**ANALYSIS**

As an initial matter, the Court grants Nextel's Motion for Leave to File Surreply [DE 170].[1] The Court now turns to the Motion to Stay Litigation and Compel Arbitration.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 was enacted in 1925 to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (internal quotation marks omitted) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). "The Supreme Court has repeatedly counseled that the FAA leaves no room for judicial hostility to arbitration proceedings and that courts should not presume, absent concrete proof to the contrary, that arbitration systems will be unfair or biased." *Penn v. Ryan's Family Steak House, Inc.*, 269 F.3d 753, 758 (7th Cir. 2001) (citations omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 641 (7th Cir. 1993) (reversing denial of motion to compel arbitration and explaining that "[i]t is beyond peradventure that the [FAA] embodies a strong federal policy in favor of arbitration").

An arbitration agreement must meet two basic conditions for the FAA to apply: (1) the agreement must be in writing; and (2) the agreement must be in a contract "evidencing a transaction involving commerce." *See* 9 U.S.C. § 2.[2] The parties do not dispute that both requirements are met.

---

[1] The Court notes that the text of the Surreply was contained within Nextel's Motion for Leave to File.

[2] 9 U.S.C. § 2 provides in full:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The FAA "provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone*, 460 U.S. at 22.  Both are sought by Cingular in this motion.

Under § 4, arbitration agreements covered by the FAA are specifically enforceable: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  More specifically, "a federal court must order arbitration once it is satisfied that the making of the agreement for arbitration or the failure to comply with the arbitration agreement is not in issue." *Harter v. Iowa Grain Co.*, 220 F.3d 544, 550 (7th Cir. 2000) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg., Co.*, 388 U.S. 395, 403 (1967) (quoting 9 U.S.C. § 4)) (internal quotation marks omitted).

Regarding a stay of litigation pending arbitration, 9 U.S.C. § 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . .

9 U.S.C. § 3.  The Seventh Circuit has explained:  "The [FAA] provides that a court must stay its proceedings and compel arbitration if it is satisfied that an issue before it is arbitrable under the parties' agreement." *Harter*, 220 F.3d at 549 (citing 9 U.S.C. § 3) (affirming district court order staying litigation and ordering arbitration).

In the instant motion, Cingular requests that the Court compel arbitration of Nextel's claim for indemnification against Cingular under 9 U.S.C. § 4 and that the Court stay all further proceedings in this case pending that arbitration as provided for in 9 U.S.C. § 3 because the issues raised by Nextel's Cross-Claim are "referable to arbitration."  In response, Nextel argues that

Nextel's Cross-Claim does not seek to resolve any dispute or controversy "arising out of" the Port Agreement but rather seeks only indemnification from Cingular, should it be determined that Nextel is liable to Toddco for the delay in porting and that the delay was caused by Cingular. Notably, Nextel does not contend that the Port Agreement does not require that the parties pursue arbitration rather than litigation to resolve their disputes or that Nextel is not a valid signatory to the Port Agreement; rather, Nextel argues solely that the arbitration provisions of the Port Agreement do not apply to the indemnification clause as relied upon by Nextel. Nextel also argues that Cingular has waived its right to arbitrate these claims.

      The Court finds that, based on the standards set forth in the FAA and based on the language contained in the Port Agreement, the parties must pursue Nextel's Cross-Claim through arbitration because Nextel's Cross-Claim is a dispute "arising out of or relating to" the Port Agreement between Nextel and Cingular. Whether the issue of indemnification is subject to arbitration under the Port Agreement is a question of contract interpretation. *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). The presumption of arbitrability requires the Court to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Communication Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) (analyzing an arbitration clause within a collective bargaining agreement)); *Welborn Clinic*, 301 F.3d at 639; *Kiefer*, 174 F.3d at 909. Any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Nevertheless, parties should only be required to arbitrate those matters the parties agreed to submit to arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *First Options of Chicago, Inc. v.*

*Kaplan*, 514 U.S. 938, 943 (1995); *United Steel Workers*, 363 U.S. at 582; *Welborn Clinic*, 301 F.3d at 639; *Rosenblum v. Travelbyus.com* Ltd, 299 F.3d 657, 662 (7th Cir. 2002); *see also AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) (finding arbitration clause not broad enough to encompass parties' dispute).

The dispute resolution clause in the Port Agreement provides, in relevant part, that "the Parties desire to resolve disputes *arising out of* this Agreement without litigation. Accordingly, in the event of a dispute, claim or controversy *arising under* this Agreement, the affected Party shall resolve the Dispute as provided herein." Cingular Br., Exh. A, Sec. 22.1.1, p. 15 (emphasis added). Both the United States Supreme Court and the Seventh Circuit have found that the phrase "arising out of" signifies "a broad arbitration clause." *See Prima Paint*, 388 U.S. at 398; *Sweet Dreams*, 1 F.3d 642. In *Sweet Dreams*, the Seventh Circuit held that

> "arising out of" reaches all disputes having their origin or genesis in the contract. . . . In fact, any dispute between contracting parties that is in any way connected with their contract could be said to "arise out of" their agreement and thus be subject to arbitration under a provision employing this language.

1 F.3d at 642; *cf. Welborn Clinic*, 301 F.3d at 641 (finding that the arbitration agreement was *not* broad in that it did not include language such as "relates to" or "arising out of"). This clause has been read broadly "to include all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts involving both contract formation and performance." *Welborn Clinic*, 301 F.3d at 639 (citing *Kiefer*, 174 F.3d at 909-10); *see, e.g., Prima Paint*, 388 U.S. at 403-04 (holding that claims of fraud in the inducement of the contract generally are subject to arbitration); *Sweet Dreams*, 1 F.3d at 641 (holding that a dispute regarding the nullification of a contract based on Illinois law "arises out of" the contract insofar as arbitration is concerned).

First, the Court finds that the parties entered into a valid arbitration agreement, the terms of which are contained in the Port Agreement. Second, a plain reading of the Port Agreement demonstrates that the Dispute Resolution and Arbitration provisions apply to the entire Port Agreement, including the indemnification provision; nothing in the indemnification provision explicitly or implicitly exempts it from the requirement of arbitration.

Moreover, the sole legal basis of Nextel's Cross-Claim against Cingular, the subject of the instant motion, is the indemnification clause within the Port Agreement. Therefore, any basis for indemnification by Cingular must have its source in the Port Agreement, and any determination of indemnification will require an analysis and determination of the Port Agreement's indemnification clause, the requirements for seeking indemnification, whether those requirements have been met, whether Cingular is liable to Nextel, etc. Although it is true that the indemnification determination necessarily requires a finding as to the fault of Cingular for any liability of Nextel in the underlying cause of action brought by Toddco, the basis of Nextel's Cross-Claim against Cingular is the indemnification clause. Accordingly, the dispute over indemnification arises out of the Port Agreement.

In addition, the Dispute Resolution provision specifically utilizes the term "arising out of," which as noted in the case law cited above, constitutes a broad arbitration clause, and any conflict "in any way connected to their contract could be said to arise out of their agreement" and to require arbitration. *Sweet Dreams*, 1 F.3d at 642. In light of the Supreme Court's strong directive to interpret clauses in favor of arbitration, the Court finds that the dispute in this case between Nextel and Cingular is subject to arbitration. In addition, because this matter is "referable to arbitration," the Cross-Claim must also be stayed under § 3 as to Cingular.

Finally, Nextel argues that Cingular has waived its right to arbitration by failing to assert its claim of arbitration either (1) when Toddco first asserted joint liability in its Complaint, which involved port issues directly attributable to performance under the Port Agreement, or (2) when Nextel clearly asserted the fault of Cingular and repeatedly sought an explanation without success. Cingular responds that it still has not received the notice required by the indemnification provision in the Port Agreement, and not having received the required notice, Cingular's obligation to pursue the dispute resolution provisions of the Agreement, and ultimately demand arbitration, has not properly been triggered under the Agreement. Rather, Cingular argues that the first time Nextel made a claim *pursuant to the Port Agreement* was in the Cross-Claim.

A party may waive a contractual right to arbitrate, expressly or implicitly, and "a party that chooses a judicial forum for the resolution of a dispute is presumed to have waived its right to arbitrate." See *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (citing *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 757 (7th Cir. 2002)). When deciding whether a party against whom waiver is sought has acted inconsistently with the right to arbitrate, courts consider the totality of the circumstances. *Id*. (citing *Ernst & Young*, 304 F.3d at 757). In addition to other factors, diligence or the lack thereof should weigh heavily in the determination of waiver, i.e. "did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?" *Id*. (quoting *Ernst & Young*, 304 F.3d at 757; *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir.1995)).

Based on this standard, Cingular did not waive its right to arbitrate the claims of Nextel arising out of the indemnification provision in the Port Agreement and asserted in the Cross-Claim. The first time Nextel asserted a claim under the indemnification clause of the Port Agreement

12

against Cingular, or any claim against Cingular, as opposed to an assertion of liability by Cingular in defense of the claims brought by Toddco against both Defendants, was when Nextel filed the Cross-Claim on July 15, 2005, seeking indemnification. Nor did Toddco's statutory claims against Nextel and Cingular constitute a trigger for Cingular to request arbitration as to a claim under the Port Agreement not yet asserted by Nextel.[3] Moreover, Cingular took no other action in response to the Cross-Claim in this federal litigation, prior to filing the instant motion, that may have constituted a waiver of the right to arbitrate. *See id*. (recognizing as well-established that a party does not waive its right to arbitrate merely by filing a motion to dismiss or filing a motion to transfer venue and that a party may waive its right to arbitrate by filing a motion to remove to federal court or by engaging in discovery) (citing cases). Therefore, Cingular has not waived its right to arbitrate the claims in Nextel's Cross-Claim arising out of the Port Agreement.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Cingular's Motion to Compel Arbitration and to Stay Litigation as to Nextel's Cross-Claim Pursuant to the Federal Arbitration Act [DE 162] and **GRANTS** Nextel's Motion for Leave to File Surreply [DE 170].

Accordingly, the Court **ORDERS** that the parties arbitrate their claims under Nextel's Cross-Claim pursuant to the Port Agreement. The Court further **ORDERS** that the litigation of Nextel's Cross-Claim against Cingular be **STAYED** pending the outcome of arbitration.

SO ORDERED this 22nd day of September, 2005.

s/ Paul R. Cherry

---

[3] The Court makes no determination as to whether Cingular received the proper notice from Nextel pursuant to the indemnification clause in Section 15 of the Port Agreement.

                                      MAGISTRATE JUDGE PAUL R. CHERRY
                                      UNITED STATES DISTRICT COURT

cc:    All counsel of record